UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JAYLYN PARKER,                          )
                                        )
                Petitioner,             )
                                        )
        v.                              )    No. 1:20-cv-01831-SEB-MG
                                        )
WARDEN,                                 )
                                        )
                Respondent.             )

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Jaylyn Parker's petition for a writ of habeas corpus challenges his conviction in prison

disciplinary case IYC 19-12-0224. For the reasons discussed below, Mr. Parker's petition is

**denied**.

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning

class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,*

485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018).

The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written

notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial

decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the

evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,*

418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

Mr. Parker was involved in a physical altercation with two correctional officers on December 24, 2019. Precisely what occurred during that altercation is the subject of both this habeas corpus proceeding and a separate civil rights action, *Parker v. Roberts*, no. 1:20-cv-00341-MPB-JMS.

The incident was first documented in the following conduct report written December 24 by Officer Kadinger:

> On 12/24/19 at approx. 7:00 A.M. I, Officer M. Kadinger, was requested by Sgt Bowen to come to HUC. Sgt Bowen had requested walk staff and I was first on scene. When I arrived I noticed Sgt Bowen had Offender Parker, Jaylyn (DOC#266611) placed in mechanical wrist restraints. Offender Parker was behaving in a loud and belligerent manner. I assisted Sgt. Bowen in a standard two-man escort with my left hand on the mechanical wrist restraints and my right hand on his right bicep. As Sgt. Bowen and I escorted Offender Parker out of the HUC lobby walk staff arrived on scene. At this time Offender Parker began behaving violently and attempted to pull away from the escort. Sgt Bowen and I assisted Offender Parker to the ground next to the sidewalk in a fixed position. At that point First Responders were called. While attempting to achieve compliance Offender Parker bit my pinky on my right hand. At this time I informed Sgt Bowen of the injury and assisted with escorting Offender Parker to RSH.

Dkt. 12-1. Sergeant Bowen provided his account more concisely in a witness statement, also dated December 24:

> On 12/24/2019 at approximately 7:01am I, Sergeant B.Bowen was advised by Officer M. Kadinger that Offender Parker, Jaylyn #266611 had bitten his right pinky finger as he was being aggressive towards staff during an escort to RSH.

Dkt. 12-2.

On December 26, 2019, Mr. Parker received a screening report notifying him that he was charged with assaulting Officer Kadinger in violation of Code 102A. Dkt. 12-3. Mr. Parker declined to present evidence from witnesses. *Id.* However, he asked to present pictures of himself and video to show that "he bit the officer because he was getting kicked and punched." *Id.*

Pictures of Mr. Parker following the incident show scrapes on his right jaw and one of his hands, plus cuts and bruising near both eyes. Dkt. 12-5. The area around his left eye is badly bruised. *Id.*

The record includes surveillance video recorded by six different cameras. Dkt. 16. At 6:55 A.M., two officers enter the HUC central dorm entryway from outside. One officer is wearing a baseball cap, and the other is wearing a stocking hat. About a minute later, Mr. Parker enters through the same door. Mr. Parker walks through a door labeled "N," then quickly reappears in the entryway. Mr. Parker and both officers can be seen speaking and making animated hand gestures.

At 6:58, Mr. Parker places his hands behind his back and turns his back to the officer in the stocking hat. That officer places Mr. Parker in handcuffs. A second, taller officer, also wearing a stocking hat, appears in the frame. Mr. Parker walks outside with the two stocking-hatted officers behind him—the taller officer on the right, and the shorter officer on the left.

Beginning at 6:58:43, the "north shack" camera shows the trio from behind. Each officer appears to be holding one of Mr. Parker's arms. At 6:58:52, they stop moving forward. It is unclear whether Mr. Parker attempts to pull away from the officers or gets pushed from behind. The shorter officer pulls Mr. Parker to the left, and the taller officer appears to punch Mr. Parker in the face. The officers then team to push Mr. Parker to the ground. Given the distance between the camera and the scuffle, the poor lighting, and the fact that two officers are between Mr. Parker and the camera, the surveillance video alone does not provide definitive evidence of what happened next.

IYC 19-12-0224 proceeded to a disciplinary hearing on December 29, 2019. Dkt. 12-4. Mr. Parker stated that he was guilty of assaulting Officer Kadinger, and the hearing officer accepted his admission. *Id.* The hearing officer assessed sanctions, including temporary loss of

certain privileges, a written reprimand, one year in disciplinary segregation, a loss of earned credit time, and a demotion in credit-earning class. *id.*

Mr. Parker filed an administrative appeal on January 17, 2020. Dkt. 12-7 at 3. Mr. Parker asked to have his disciplinary segregation term reduced. *Id.* He stated that he acted in self defense and as a result of a mental health condition. *Id.* The appeal was denied. *Id.* at 1. Mr. Parker did not file a second-level appeal.

### III. Analysis

Mr. Parker is plain about both the reason he brought this habeas petition and the reason he believes he is entitled to relief. He states that officers attacked him on December 24 and that he was disciplined for defending himself. He seeks habeas relief so he can vacate his disciplinary conviction and pursue damages in his parallel civil rights case.

The respondent asserts that Mr. Parker's petition is barred by his failure to exhaust available administrative remedies. Because it is not clear that any remedy was available to Mr. Parker, the Court addresses the merits of Mr. Parker's petition and clarifies the scope of its ruling.

A.      **Exhaustion of Administrative Remedies**

A court may not grant a habeas petition "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). When the petitioner "has not exhausted a claim and complete exhaustion is no longer available, the claim is procedurally defaulted," and the district court may not grant habeas relief based on it. *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019). Because Indiana law does not provide for judicial review of prison disciplinary proceedings, § 2254(b)(1)'s exhaustion requirement demands that the prisoner exhaust her claims through the Indiana Department of Correction's (IDOC) administrative appeals process. *Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir. 2002).

The IDOC maintains a two-step administrative appeal process. Dkt. 12-8 at § X. There is no dispute that Mr. Parker completed the first step but not the second.

There also is no dispute that Mr. Parker pled guilty to his disciplinary charge. An inmate who pleads guilty "may appeal only the sanction(s) imposed." *Id.* at § X(B).

The respondent acknowledges the guilty-plea exception but nevertheless asserts that Mr. Parker's petition is barred by his failure to bring two administrative appeals. It is not clear, however, that Mr. Parker could challenge the basis for his disciplinary conviction in his administrative appeals. The language of the Disciplinary Code suggests that he could not. It also is not clear that § 2254(b)(1)(A) obligated Mr. Parker to bring two administrative appeals raising arguments that the Disciplinary Code told him he could not raise. The respondent does not address the issue.

Ultimately, the Court need not reach the exhaustion issue. In *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997), "the Supreme Court noted that its cases have 'suggest[ed] that the procedural-bar issue should ordinarily be considered first.' Nevertheless, added the Court, it did 'not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.'" *Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010) (quoting *Lambrix*, 520 U.S. at 525). In this case, the exhaustion issue is murky, and Mr. Parker has no chance of relief on the merits. In the interests of justice and judicial efficiency, the Court proceeds to the merits of Mr. Parker's petition without resolving the exhaustion issue.

## B.      Sufficiency of Evidence

Mr. Parker's petition is less about his conviction for assaulting Officer Kadinger than it is about the officers' actions toward him. He argues that the officers' use of force violated his rights,

5

that he acted in self-defense, and that he was charged with assault to cover up the officers' misconduct.

If Mr. Parker bit Officer Kadinger after the officers first attacked him, he could be convicted of a disciplinary violation without violating due process. "Prisoners lack even a right to invoke self-defense in disciplinary proceedings when they have resorted to violence as a means of protecting themselves." *Gevas v. McLaughlin*, 798 F.3d 475, 484 (7th Cir. 2015).

To establish a due-process violation, Mr. Parker would have to show instead that his disciplinary conviction was not supported by evidence. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added). *See also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Three key pieces of evidence support the hearing officer's conclusion that Mr. Parker assaulted Officer Kadinger: the conduct report stating that Mr. Parker bit Officer Kadinger, Sergeant Bowen's statement that Officer Kadinger said Mr. Parker bit him, and Mr. Parker's admission to the hearing officer that he was guilty. The video does not clearly show Mr. Parker

6

biting Officer Kadinger, but that makes no difference. Some evidence supports the hearing officer's decision, and that is all due process requires. Mr. Parker asks the Court to grant his statements greater weight than the evidence supporting his conviction, and the Court may not do so.

## C.      Scope of Ruling

Mr. Parker's principal interest in this habeas action appears to be clearing the way for his damages claims against the officers involved. If a suit for damages would necessarily imply the invalidity of a prisoner's disciplinary conviction, he may not bring the damages claim "'unless and until the inmate obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence.'" *Haywood v. Hathaway*, 842 F.3d 1026, 1029 (7th Cir. 2016) (quoting *Nelson v. Campbell*, 541 U.S. 637, 646 (2004)). "This is a version of issue preclusion (collateral estoppel), under which the outstanding criminal judgment or disciplinary sanction, as long as it stands, blocks any inconsistent judgment." *Id.* This rule is an extension of the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In this entry, the Court rules only that Mr. Parker is not entitled to a writ of habeas corpus to vacate his disciplinary conviction. The Court makes no ruling with respect to any potential *Heck* issue or any matter pending in the civil rights case. The Court finds in this case that some evidence supports the hearing officer's conclusion that Mr. Parker assaulted Officer Kadinger by biting him.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Parker's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he

seeks. Accordingly, Mr. Parker's petition for a writ of habeas corpus must be **denied** and the action

**dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

    **IT IS SO ORDERED.**

Date:   5/25/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAYLYN PARKER
266611
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov